# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EURIA A. JONES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-304-SPS |

## OPINION AND ORDER

The claimant Euria A. Jones requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born June 7, 1955, and was fifty-seven years old at the time of the most recent administrative hearing (Tr. 488-493). He completed the ninth grade, and has worked as an auto body repairer (Tr. 147, 479). The claimant alleges he has been unable to work since July 27, 2002, due to a spinal cord injury, depression, bone spurs, carpal tunnel syndrome, knee problems, dragging his right foot, and tingling from the neck down (Tr. 142-143).

### Procedural History

On September 21, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Walter Orr conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 23, 2009 (Tr. 38-49). The Appeals Council then denied review, but the Eastern District of Texas reversed on appeal in Case No. CIV-10-384 (Judge Schneider/Judge Mazzant) and remanded the case for further proceedings (Tr. 542-550). ALJ Doug Gabbard II then held a second hearing and determined that the claimant was not disabled in a written opinion dated March 20, 2013 (Tr. 464-481). The Appeals Council again denied review, so ALJ Gabbard's March 20, 2013 opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481. The claimant filed a

subsequent claim for Title II and Title XVI benefits on June 23, 2009, and the claimant was deemed disabled beginning April 21, 2009 (Tr. 553).

## Decision of the Administrative Law Judge

ALJ Gabbard made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but he could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and must be allowed to alternately sit and stand once every three hours during the workday for the purpose of changing positions but not leaving the workstation. He further imposed the psychologically-based limitations of performing unskilled work where supervision was simple, direct, and concrete; interpersonal contact with co-workers was incidental to the work performed, like assembly work; and he would have no dealings with the public (Tr. 474). He further stated that if the claimant could perform light work, he could perform sedentary work (Tr. 474). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled from July 15, 2007 to April 21, 2009, because there was work in the national and regional economies that he could perform, *i. e.*, price marker and garment bagger (Tr. 479-480).

## Review

The claimant contends that the ALJ erred: (i) by failing to find that his impairments meet Listing 1.04, (ii) by failing to adopt limitations related to his severe mental impairments and severe impairment of carpal tunnel, (iii) by failing to properly

consider the medical source opinion of Dr. Eswar Sunderam, and (iv) by failing to properly assess his credibility. The Court agrees that the ALJ failed to properly assess the claimant's impairments at step four, and the decision of the Commissioner is therefore reversed.

The claimant has the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spines; bilateral carpal tunnel syndrome; pancytopenia; history of hypothyroidism; obesity; and depressive disorder (Tr. 467). The relevant medical evidence reveals that the claimant underwent a cervical fusion at C5-6 in 2002. A lumbosacral spine MRI on April 24, 2008 was termed "abnormal" and consistent with loss of lumbosacral lordosis/lumbosacral spondylosis, generalized degenerative disc changes, and acquired on congenital lumbosacral spinal canal stenosis. A cervical spine MRI performed the same day revealed loss of cervical lordosis and cervical spondylosis, metallic susceptibility artifact consistent with anterior cervical spinal fusion, and generalized cervical disc changes, along with acquired on congenital cervical spinal canal stenosis, multilevel neural foraminal stenosis, and a lesion in the cervical spinal cord consistent with old traumatic injury (Tr. 319-321). An August 14, 2007 MRI of the cervical spine, gave the impression of: (i) central/midline focal disk protrusion/herniation at T5-T6 resulting in at least moderate/moderate to severe spinal stenosis, (ii) midline/paramidline focal disk bulging at T3-T4 and T4-T5, (iii) prominent multi-level degenerative changes with associated traction disk bulging from C3-C4 through C7-T1 resulting in moderate to severe spinal stenosis through this level overall most prominent from C3-C4 through C6-C7, particularly at C6-C7 as discussed above, and

associated with multi-level moderate to severe neural foraminal encroachment, (iv) C5-C6 fusion, (v) patchy non-specific myelomalacia in the cervical cord overall most prominent from C5-C6 to the C7-T1 level (Tr. 235-236). The claimant received treatment at Texoma Neurology Associates (Texoma) and on January 24, 2008, he was diagnosed with cauda equina syndrome, degenerative spine changes, status post cervical fusion, hypothryroidism, and myelomalacia (Tr. 290). An Internal Medicine Consultative Examination by Dr. Cecilier Chen revealed severe degenerative spine disease with multiple levels involved cervical, thoracic, and lumbar spine; early sign of neurogenic bladder secondary to spinal stenosis; and status post cervical spine C5-6 fusion; and a history of hypothyroidism (Tr. 298). This exam was accompanied by an X-ray that revealed moderate to severe lower thoracic spine and moderate lumbar spine degenerative changes most marked at the L5-S1 level on May 5, 2008 (Tr. 299). A thoracic spine MRI from September 19, 2008 revealed: (i) fatty replacement of the marrow at the T7 vertebral body level, (ii) thoracic disc degeneration, (iii) thoracic spinal canal stenosis (Tr. 736). An October 22, 2008 treatment note from Texoma assessed the claimant with cervical, thoracic, and lumbosacral disc degeneration; cervical, thoracic, and lumbosacral spondylosis; and cervical, thoracic, and lumbosacral spinal canal stenosis, and noted that he needed a neurological evaluation but that would be difficult in light of the claimant's indigent status (Tr. 392). The claimant was evaluated at Parkland Orthopedic Clinic on November 10, 2008, and notes reflect that the claimant had difficulty with standing or walking for any prolonged amount of time, difficulty rising from a chair, and that sitting helped to alleviate his symptoms (Tr. 911).

On June 25, 2009, the claimant underwent further MRI studies. An MRI of the lumbar spine revealed: (i) diffuse degenerative change resulting in multilevel canal stenosis from level of L1 through L5, multilevel moderate-to-severe canal stenosis L1 through L5 and mild-to-moderate foraminal narrowing L4 through S1; (ii) *no marked changes since 4/24/08*; (iii) no abnormal enhancement (Tr. 713) [emphasis added]. The MRI of the cervical spine revealed: (i) *no marked change since 4/28/08*; (ii) persistent multilevel moderate-to-severe central canal narrowing and moderate-to-severe neural foraminal narrowing at the levels of C3 through C7; and (iii) persistent nonenhancing central elevated T2 signal C5 level, which may be related to cord encephalomalacia *without significant change* (Tr. 715) [emphasis added]. On May 29, 2009, Texoma notes described the claimant as having "excruciating neck pain with any position, increases with activity and decreases somewhat with rest (Tr. 732).

On December 15, 2009, Dr. Sundaram completed a clinical assessment, finding, *inter alia*, that the claimant could stand and/or walk and sit, less than two hours in a regular workday, that the claimant required complete freedom to rest frequently without restriction, and that his pain was moderate to severe and would be experienced continuously (Tr. 384-386). He based his findings on the claimant's MRI, and indicated that objective signs of this included muscle spasm and limitation of motion (Tr. 385). He further indicated that the claimant would likely be absent from work four or more days a month (Tr. 386).

On November 28, 2007, a state reviewing physician found the claimant could perform light work, but only occasionally climb ramps/stairs and ladders/rope/scaffolds,

balance, stoop, kneel, crouch, and crawl (Tr. 281-282). On August 24, 2009, in conjunction with the claimant's subsequent disability claim, a state reviewing physician found the claimant was limited to sedentary work with the same postural limitations, positively citing the June 2009 MRIs as part of the supporting reasoning (Tr. 747).

On July 9, 2009, notes from Texoma reflect the claimant "continue[d] to complain chronic neck and back pain," noting the claimant had "decreased endurance and decreased stability to stand; it hurts even to sit. He is unable to find any position that feels comfortable" (Tr. 893). Under the section labeled "Medical Decision Making," the nurse practitioner stated, "The patient is unable to lift, twist, pull, or bend. The patient should not be working at all" (Tr. 894). On August 24, 2009, Dr. Sundaram (from Texoma) indicated that he told the claimant he needed "major decompressive surgery," in light of the MRI findings but acknowledged the difficulty in light of the claimant's indigent status (Tr. 897).

On May 11, 2011, as part of his mental evaluation, the claimant reported back pain (Tr. 872). Notes from Memorial Clinic on September 15, 2009, indicate they were working on a referral for pain control and/or a neurosurgeon for the claimant, and on January 5, 2012, notes reflect the claimant had decreased grip strength and decreased range of motion in the neck (Tr. 904, 906).

The ALJ found at step two that the claimant's carpal tunnel syndrome was a severe impairment, but did not mention it at all at step four with the possible exception of grip strength findings. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the

sequential evaluation. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). *See also Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion].

Furthermore, the ALJ failed to properly assess the claimant's severe cervical, lumbar, and thoracic impairments, including a failure to conduct a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). Although he acknowledged the claimant's treatment history, and subsequent determination of disability, he ignored the subsequent records as not having a bearing on the claimant's physical impairment assessment for the relevant time period, commenting at step two that the claimant had not sought treatment for his back between April 21, 2009 and January 4, 2012 (Tr. 471). This ignores treatment records from May 29, 2009 (Tr. 732), June 2009 (Tr. 713), July 2009 (Tr. 713, 715, 893), August 2009 (Tr. 897), September 2009 (904), December 2009 (Tr. 384-386), and May 2011 (Tr. 872), among others. The ALJ adopted the state reviewing physician opinion that the claimant could perform light work but did not even address the state reviewing physician opinion completed four months outside the disability period, which found that the claimant would

be limited to sedentary work. *Clifton*, 79 F.3d 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent*, 739 F.2d at 1394-95. *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted];.*Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted]. This is particularly important where, as here, the evidence used to find the claimant disabled in the subsequent opinion contains June 2009 MRIs of the cervical and lumbosacral spines indicating no significant changes in the impressions since April 2008 – a time frame *well within* the disability determination period.

The ALJ compounded his error when he engaged in improper analysis related to the claimant's pain. Rather than discuss the evidence, the ALJ rejected the claimant's pain using boilerplate language that stated, "While the claimant may experience some degree of pain or discomfort at time of heavy overexertion, even moderate level sof pain are not, in and of itself, incompatible with the performance of certain levels of sustained work activity" (Tr. 478). *Hardman*, 362 F.3d at 679 ("[B]oilerplate language fails to

inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs*, 248 F.3d at 1239. In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). In this case, the ALJ was therefore obliged to consider the claimant's degenerative disc disease of the cervical, thoracic, and lumbar spines, and bilateral carpal tunnel syndrome as pain-producing impairments under the analysis set out in *Musgrave*. *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

Last, Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the

impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6 Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

The ALJ recited the foregoing authorities as to obesity, and agreed that obesity "can cause limitation of function in any of the exertional functions such as sitting, standing[,]" and continued, finding that "it is reasonable that this great weight exacerbates his degenerative disc symptoms" (Tr. 478). Even so, he failed to connect the claimant's obesity in his findings as to the claimant's RFC, or to determine whether the medical evidence demonstrated any *additional or cumulative* effects from his obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). This was important to do because the claimant argued at the

administrative hearing and on appeal that his combination of impairments makes him unable to sit and stand for the length of time required by light work (and a finding that he could *only* do sedentary work would render him disabled according to Medical-Vocational Rule 201.10, aka "the Grids"). *See* 20 C.F.R. Pt. 404 Subpt. P App. 2.

Because the ALJ failed to properly evaluate the claimant's impairments, and further failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**